JOHN L. SHULTZ et al., Respondents, v. THE C. H. QUEREAU Co., INC., et al., Appellants, Impleaded with Others..

JOSEPH M. TALCOTT, Respondent, v. THE C. H. QUEREAU Co., INC., et al., Appellants, Impleaded with Others.

Lien — coal consumed in generating steam in boilers of machinery used in construction of highways is not "material furnished" for which a lien can be filed.

Coal, sold to a contractor and builder of a state highway and used in generating steam in the boilers of road rollers and traction engines used on the contract, is not "materials" furnished for the construction of the highway within the meaning and intent of section 5 of the Lien Law (Cons. Laws, ch. 33). (Schaghticoke Powder Co. v. G. & J. Railway Co., 183 N. Y. 306, distinguished.)

Shultz v. Quereau Co., 148 App. Div. 935, modified.

(Argued January 21, 1914; decided February 24, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 29, 1912, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term in actions consolidated pursuant to section 43 of the Lien Law (Laws of 1909, ch. 38).

The nature of the action and the facts, so far as material, are stated in the opinion.

17

*George B. Dolsen* and *William F. Rafferty* for appellants. It was error for the court to allow the lien for items consisting of coal. (*Cincinnati R. R. Co.* v. *Shera,* 36 Ind. App. 315; *Mossburg* v. *United Oil & Gas Co.,* 87 N. E. Rep. 992; *McAuliffe* v. *Jorgenson,* 107 Wis. 132; *Stewart-Shute Lumber Co.* v. *Mo. R. R. Co.,* 33 Neb. 29; *Perrault* v. *Shaw,* 69 N. H. 180; *Standard Oil Co.* v. *Lane,* 75 Wis. 636; *Boosher & Co.* v. *B. & O. R. R. Co.,* 65 Md. 99; *Knapp* v *St. L. & K. Railway Co.,* 6 Mo. App. 205; *Central Trust Co.* v. *Texas, etc., R. Co.,* 27 Fed. Rep. 178; *Waters-Pierce Oil Co.* v. *Texas R. R. Co.,* 23 Fed. Rep. 703; *Dudley* v. *T., A. A. & N. M. Ry. Co.,* 65 Mich. 655.)

*E. C. Miller* for respondents. The Lien Law should be liberally construed to confer the benefits intended to be conferred. (*Schaghticoke Powder Co.* v. *G. & J. Ry. Co.,* 183 N. Y. 306; *Ringle* v. *Wallis Iron Works,* 149 N. Y. 439.) Plaintiffs Schultz and De Witt are entitled to a lien for coal furnished for the construction of the state roads in question. (*Schaghticoke Powder Co.* v. *G. & J. Ry. Co.,* 183 N. Y. 306; *Zipp* v. *Fidelity & Deposit Co.,* 73 App. Div. 20; *Hazard Powder Co.* v. *Byrnes,* 21 How. Pr. 189; *Gallagher* v. *Karns,* 27 Hun, 375; *Beals* v. *Fidelity & Deposit Co.,* 76 App. Div. 526; 178 N. Y. 581; *Troy Public Works Co.* v. *City of Yonkers,* 207 N. Y. 81; *Upson* v. *United States Engineering & Construction Co.,* 72 Misc. Rep. 541; *McAuliff* v. *Jorgensen,* 107 Wis. 132; *Stewart-Shute Lumber Co.* v. *Mo. R. R. Co.,* 33 Neb. 29; *Boosher & Co.* v. *B. & O. R. R. Co.,* 65 Md. 99; *Knapp* v. *St. L. & K. Ry. Co.,* 6 Mo. App. 205.)

COLLIN, J. The actions are to foreclose mechanics' liens. The single question requiring discussion is: Is coal, sold to a contractor and builder of a state highway and used in generating steam in the boilers of road rollers and

traction engines used on the contract, materials furnished for the construction of the highway within the meaning and intent of section 5 of the Lien Law. (Cons. Laws, ch. 33.)

Section 5 is: "A person performing labor for or furnishing materials to a contractor, his sub-contractor or legal representative, for the construction of a public improvement pursuant to a contract by such contractor with the state or a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the moneys of the state or of such corporation applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract, upon filing a notice of lien as prescribed in this article."

We have decided that dynamite used in breaking up frozen earth, required by a construction contract to be excavated, so that it could be handled by means of a steam shovel, was material furnished for the improvement of real property and its furnishing a lawful subject of a lien within the meaning of section 3 of the Lien Law. (*Schaghticoke Powder Co.* v. *G. & J. Railway Co.*, 183 N. Y. 306.) We have also held that the rent of a steam shovel leased to the contractor for use and used in the construction of a public improvement was not the lawful subject of a lien within section 5 already quoted. (*Troy Public Works Co.* v. *City of Yonkers*, 207 N. Y. 81.). While the line of demarcation between these two decisions is not broad, it is real and indestructible and a clear definition of it will suggest, at least, the answer to the question presented.

The dynamite was applied directly to the earth which had to be removed so that the structure might be completed as planned. The removal of the earth was an essential part of the construction. The dynamite was furnished and used to effect, in part, by its direct action that construction and entered wholly into it. The construction primarily, and not mediately, absorbed and

included it. It and the substances which in the process of construction took the place of the earth it released entered into the construction in the same sense and with the same reality although it did not remain a visible part of the completed improvement.

It was not thus with the steam shovel. It, as an article or substance, was not applied to the construction, upon the completion of which it remained substantially as it was at the beginning and ready to be taken to and used upon another undertaking. Its effects, and not it, were applied directly to the construction which did not absorb or include it. It did not lose its identity nor cease to exist as a separate article. It promoted and aided in but was not a material furnished for the construction. The distinction we are here expressing was made clear by our decisions already mentioned.

Was the coal used to operate the steam rollers and traction engines to be considered as an adjunct ·to those machines or as materials furnished for the construction of the highway? While article 2 of the Lien Law, which contains section 5, should receive a liberal, it should not be given a forced and unnatural construction, or be extended to a state of facts not fairly within its general scope. The facts underlying the decision that the furnishing of the dynamite in the *Schaghticoke* case upheld a lien for its cost do not exist as to the coal furnished the contractor in this case. It was applied to the machines and not directly to the highway, and they and not it absorbed it. Without stating further reasoning leading to the decision that the price of the coal in question was not a lawful subject for the liens, we refer to important decisions supporting that conclusion. In *Sampson Co.* v. *Commonwealth* (202 Mass. 326) the court, in holding that coal burned in engines used on the work to furnish power was not materials used in the construction of the work, said: "We are of the opinion that there is a plain distinction between materials so used, and materials that enter ·directly into

the work and become a part of it, or those that are consumed by being applied directly to substances to be moved or changed to make a place for the structure, or be incorporated into it. Under statutes like that of Massachusetts, liens for coal so used have generally been denied." In *Thomas* v. *Commonwealth* (102 N. E. Rep. 428) it was held upon the authority of the *Sampson Co. Case* (*supra*) that coal used in operating the steam roller used in the construction of a state highway was not materials furnished for the construction of the highway. In *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.* (146 Wis. 12) the court after deciding that the materials used in a coffer dam constructed specially to make possible the building of the dam contracted to be built, and which were, in effect, destroyed by their use in the coffer dam or subsequent use, were the lawful subject of a mechanic's lien (concerning which decision we express no opinion), used the language which we quote with approval: "It is certainly true that this doctrine must be carefully guarded or it may be carried to extreme and fanciful lengths. Thus it might be argued that upon the same principle coal that is used in portable engines, oil that is used in the lubrication of building machinery, and even food which is eaten by laborers, are all consumed in the construction of the building and hence are lienable materials. But all these things seem quite plainly distinguishable. They are at least one step further removed from the actual work of construction. They have neither physical contact nor immediate connection with the structure at any time. They are used only to facilitate and make possible the operation of tools, machinery, or men, which in their turn act upon the structure. The authorities are unanimous in holding that no lien accrues for such materials. (*Sampson Co.* v. *Commonwealth*, 202 Mass. 326; *Philadelphia* v. *Malone*, 214 Pa. St. 90; *Standard Oil* v. *Lane*, 75 Wis. 636; *Luttrell* v. *L. F. & J. R. R. Co.*, 119 Tenn. 492.) "

The judgments of the Appellate Division and Special Term should be modified so as to disallow the sums paid for coal used for operating the road rollers and traction engines, and as so modified affirmed, without costs to either party.

WILLARD BARTLETT, Ch. J., WERNER, CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur.

Judgments accordingly.