CARNEGIE FUEL COMPANY, Respondent, vs. INTERSTATE TRANSFER RAILWAY COMPANY, Appellant.

*December 7, 1916—January 16, 1917.*

*Mechanics' liens: Materials furnished "for or in or about" structure: Coal used in generating power for machinery.*

1. Coal furnished to the principal contractor and used in generating steam for engines which operated machinery in making a railroad right of way was not material used "for or in or about" the construction of such right of way, and no lien therefor is given by the statute (secs. 3314, 3315, Stats.).
2. Where material has been consumed in the construction of a building or other structure,—it having had physical contact or immediate connection with the structure itself,—there may be a lien therefor; but if the material be used only to facilitate or make possible the operation of tools or machinery which in their turn act upon the structure, there can be no lien.

APPEAL from an order of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Reversed.*

For the appellant there were briefs by *R. I. Tipton* of Superior and *Fryberger, Fulton & Spear* of Duluth, Minnesota, and oral argument by *H. C. Fulton.*

For the respondent there was a brief by *Luse, Powell & Luse* of Superior, and oral argument by *C. Z. Luse* and *L. K. Luse.*

WINSLOW, C. J.    The action is to foreclose a mechanic's lien upon a railroad right of way for the price of coal furnished to the principal contractor to be used and in fact used in engines which operated steam shovels, derricks, and other machinery engaged in the work.    This appeal is taken from an order overruling a general demurrer to the complaint, and the question presented is whether our statutes give a lien for such coal.    This court has not met this exact question before.    In the case of *Barker & S. L. Co. v. Marathon P. M. Co.* 146 Wis. 12, 130 N. W. 866, the question involved was, whether lumber and other materials used in constructing a cofferdam for the purpose of holding back water during the construction of a permanent dam and whose life and substance had been practically consumed in the work, were materials furnished "for or in or about" the permanent dam, so as to be lienable under the mechanic's lien law, and it was held that they were.

The whole question was then given the fullest consideration, and it was realized that a line of demarcation must be drawn somewhere or the mechanic's lien law might be carried far beyond the intent of the legislature and property might be subject to liens for materials and labor quite remote from the building itself but still in the direct line of causation and in the absence of which the building could not have been erected.    The question was this: If a lien is to be allowed for any material which has not actually entered into the structure, where shall the line be drawn?

It was deemed important that in making the decision which was made in that case the principle upon which it was thought to be logically based should be announced, and it was there held in substance that where material has been consumed in the construction of the building, it having had physical contact or immediate connection with the structure itself, there will be a lien therefor, but that if the material be used only to facilitate or make possible the operation of

tools or machinery which in their turn act upon the struct-
ure, there can be no lien.    Coal used in portable engines
was there mentioned as included in the latter class.

It is certainly true that the question of the lienable character
of coal was not then before the court and hence the
language is in one sense *obiter,* but it was advisedly used
after much thought with the idea that both the legislature
and the legal profession were entitled to know where the con-
clusions reached by the court in that case led.

Authorities supporting the proposition were there cited
from Massachusetts, Pennsylvania, and Tennessee.    The
following authorities might also have been cited: *A. M. Hol-
ter H. Co. v. Ontario M. Co.* 24 Mont. 198, 61 Pac. 8;
*Houston & T. C. R. Co. v. Anderson,* 44 Tex. Civ. App. 394,
98 S. W. 440; *Central T. Co. v. T. & St. L. R. Co.* 23 Fed.
703; *Cincinnati, R. & M. R. Co. v. Shera,* 36 Ind. App.
315, 73 N. E. 293.    Since that decision the following de-
cisions have been made either expressly or by strong im-
plication affirming the same doctrine: *Alpena v. Title G. &
S. Co.* 168 Mich. 350, 134 N. W. 23; *Thomas v. Comm.*
215 Mass. 369, 102 N. E. 428; and *Schultz v. C. H. Quereau
Co.* 210 N. Y. 257, 104 N. E. 621.

In the case last mentioned the exact question here raised
was presented and the lien was denied, the court quoting
with approval the language of this court in the *Barker Case.*

It is true that there are some differences in the wording of
the various lien statutes in the states covered by these de-
cisions, some giving liens for materials furnished *for* the
property, some for materials used *upon,* or *in,* and *for,* or
*about* the premises, but they all express substantially the
same idea, and no material difference is perceived between
them and the Wisconsin statute, which gives a lien for ma-
terials furnished "for or in or about" the erection of the
structure.

The case of *Johnson v. Starrett,* 127 Minn. 138, 149 N.
W. 6, decided in 1914, is directly to the contrary, but is

based upon a different and much broader statute, namely, a statute which gives a lien to one who "contributes to the improvement of real estate by . . . furnishing material . . . for the erection . . . of any building." Much emphasis is placed upon the fact that the coal· used "contributed" to the improvement of the defendant's property, and the fact that in the states holding to the other view the statutes are not as broad as the Minnesota statute is given as one of the reasons for not giving the decisions of these states their usual weight.

We are not impressed with the last-named decision, especially in view of the difference in the statute, nor does the case of *City Trust, S. D. & S. Co. v. U. S.* 147 Fed. 155, seem at all persuasive, on account of the difference in the language there construed.

It is significant that there have been several sessions of the legislature since the decision in the *Barker Case* and that the mechanic's lien law has received numerous amendments, but there has been no amendment changing the rule announced in that case. We see no good reason why the court should change it.

*By the Court.*—Order reversed, and action remanded with directions to sustain the demurrer to the complaint.